IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES E. PITTS, JR.,

    Plaintiff,

v.                                                           Civil Action No. 5:13cv100
                                                           Judge Stamp

NORTH CENTRAL REGIONAL JAIL;
GEORGE TRENT, Warden; LT. RODGER
ELDER; OFFICER BOCKINS; OFFICER
RIDDLE; OFFICER BRIAN CRADDOCK;
OFFICER TAYLOR; OFFICER MAYS; and CPL.
HENTHORNE,

    Defendants.

## REPORT AND RECOMMENDATION

### I. Procedural History

On August 5, 2013, the *pro se* plaintiff, then an inmate at SCI Mercer in Mercer, Pennsylvania, initiated this case by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. §1983. The plaintiff corrected certain deficiencies with his pleadings on August 8, 2013, and was granted permission to proceed as a pauper on August 19, 2013. He paid an initial partial filing fee on August 28, 2013. Upon a preliminary review of the file, the undersigned determined that summary dismissal was not appropriate, and directed the United States Marshal Service to serve the complaint.

On October 1, 2013, the defendants filed a Motion to Dismiss with attached exhibits. Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on October 2, 2013. The plaintiff did not file a response.

This case is before the undersigned for a report and recommendation on the pending motion pursuant to LR PL 2.

### II. Contentions of the Parties

**A. The Complaint**

Without stating any specific constitutional violation, the plaintiff alleges generally that his civil rights were violated. He asserts failure to protect and excessive force claims, and a claim that the defendant interfered with his right to file administrative remedies. He contends that on September 18, 2010, while a pre-trial detainee at the North Central Regional Jail in Greenwood, West Virginia, he got into a verbal confrontation with another inmate in the day room. He alleges that he left the day room to return to his cell, but the other inmate followed him there and attacked him. Plaintiff contends that when he fled his cell to get away, Officer Riddle ("Riddle") approached and asked what happened; plaintiff reported that the other inmate attacked him. He contends that inexplicably, upon hearing this, Riddle grabbed him by the shoulders, ordered him to the ground; and he complied. Despite this, he contends that Officer Bockins ("Bockins") pinned him to the floor with his right shin, and even though plaintiff insists that he did not resist, another unnamed officer pepper-sprayed him. Plaintiff asserts that Officer Craddock ("Craddock"), who weighed "about 250 lbs.," sat on his lower back, facing his feet, twisted his feet and ankles and bent his toes. Once plaintiff was handcuffed and shackled, the officers picked him up and began exiting the pod. While being escorted through a sally port by Bockins and Craddock, plaintiff contends that Bockins grabbed the back of his head and slammed him face first into the steel door, causing a 3" laceration above his right eye which bled profusely. He asserts that as he was led through the last door, Bockins yelled over to Cpl. Henthorne ("Henthorne") "Corparol [sic] look he - - fell."[1] Plaintiff contends that the officers then took him outside, walked him in laps around the yard, spraying and rinsing his eyes to remove the pepper spray. An officer appeared with a camcorder toward the end of this, but because its battery was dead, no footage was taken. Plaintiff was then first taken to the shower to be cleaned up, and then to medical for treatment. He asserts that when the nurse on duty asked what happened, one of the officers stated "I fell." Plaintiff contends that this was a lie. When medical informed the officers that plaintiff required emergency room treatment, he was taken to

---

[1] Dkt.# 1 at 3.

Clarksburg to the hospital, where he was seen by 2 doctors. The doctors asked what happened, and one of the transport officers stated "I fell." Plaintiff contends that the doctor advised that his injuries were inconsistent with a fall. Plaintiff avers that he received 12 - 15 stitches to close the wound, and was told by the guards that

> if I tried to file any charges or take any legal actions that I would be sorry. And that I would not be the first person to have a fatal accident in their jail. So at that time I decided to wait until I was released from West Virginia custody. Because I feared for my life.

Dkt.# 1 at 4.

As relief, he seeks $250,000.00 for his pain and suffering and $250,000.00 for "future damages and medical services."

**B. The Defendants' Motion to Dismiss**

In their memorandum in support of their motion to dismiss, the defendants argue that the plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, the defendants assert:

1) the plaintiff's claims are untimely and thus should be dismissed as a matter of law;

2) no claim, including but not limited to a claim under *respondeat superior*, is available against Warden George Trent;

3) the plaintiff's claims should be dismissed because he failed to exhaust all available administrative remedies;

4) the plaintiff's injuries are *de minimis* in nature, and thus should be dismissed as a matter of law; and

5) the defendants are all entitled to qualified immunity.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

3

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir

1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

#### A. North Central Regional Jail

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982)

In the instant case, in addition to the other named defendants, the plaintiff names the North Central Regional Jail ("NCRJ") of Greenwood, West Virginia as a defendant. The NCRJ is not a proper defendant because it is not a person subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (Neither a state nor its officials acting in their official capacities are "persons" under 42 U.S.C. 1983). This rule applies "to States or governmental entities that are considered 'arms of the State' for Eleventh

Amendment purposes." Id. at 70. Accordingly, the NCRJ is not a proper party to this suit and should be dismissed.

## B. Statute of Limitations

Even if the plaintiff's claims were not time-barred, the plaintiff has failed to state a claim for which relief can be granted. Because it appears that the plaintiff may have been a pre-trial detainee[2] at the time of the alleged assault, his claim would be governed by the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). Nonetheless, pre-trial detainees are subject to the same protection under the Fourteenth Amendment that prisoners receive via the Eighth Amendment. Hill v. Nicodemus, 979 F.2d 987, 999 (4th Cir. 1980).

For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 471 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions.

W.Va. Code § 55-2-12(b) provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

In this case, the plaintiff's claims against the defendants are clearly well outside the two-year applicable statute of limitations. It is undisputed that the incident in which plaintiff sustained the laceration above his eye occurred on September 18, 2010. In order to comply with the applicable two-year statute of limitations, the plaintiff should have filed suit by September 18, 2012. Ignoring

---

[2] The plaintiff assert this; the defendants neither confirm nor deny it.

for the moment that the plaintiff admits he did not first seek any written[3] formal or informal relief through the administrative remedy system, plaintiff did not file suit until August 5, 2013, two years, ten months and eighteen days after the injury occurred. Although the plaintiff makes a vague claim about having waited to file his case until he was free of the custody of West Virginia, because the defendant correctional officers allegedly threatened him with death if he filed an administrative remedy or pursued legal action, the plaintiff fails to provide any detail or factual information to support such a claim. Accordingly, the plaintiff's claims against the defendants are time-barred.

Further, in addition to being time-barred, plaintiff's conclusory allegations regarding the defendants' failure to protect him and denying him access to the administrative remedy process are woefully insufficiently-pled. Moreover, the claims are impossible to give any credence to, because even a cursory review of the record indicates that they are also frivolous and malicious; plaintiff's claim regarding the mechanism of his *de minimis* injury is completely false. Along with their dispositive motion, the defendants have attached multiple incident reports from various West Virginia Regional Jail staff on the day of the incident, proving that the plaintiff was the aggressor in the fight with the other inmate, head-butting him in the face,[4] causing his nose to bleed profusely;[5] plaintiff had no visible injury from the fight;[6] plaintiff refused to desist when ordered to do so;[7] plaintiff became combative and aggressive toward officers;[8] plaintiff kicked and resisted being shackled;[9] plaintiff had to be pepper-sprayed and physically restrained to be subdued;[10] and the eye

---

[3] Plaintiff alleges that he "spoke to the Lt [sic] and the warden and no action was taken." Dkt.# 5 at 6.

[4] See Dkt.# 17-2, 17-3, and 17-10.

[5] See Dkt.# 17-1, 17-2, 17-3, 17-4, 17-5, 17-6, 17-8, and 17-10.

[6] See Dkt.# 17 at 1 - 2.

[7] See Dkt.# 17-2, 17-3, 17-4, and 17-8.

[8] See Dkt.# 17-1, 17-5, and 17-6.

[9] See Dkt.# 17-7 and 17-9.

laceration occurred when plaintiff tripped and hit his head on the door frame while being escorted through the door,[11] either because his feet were shackled[12] or because he had been pepper-sprayed,[13] or both. Finally, the defendants also attach an email from the Warden[14] regarding a letter, intercepted by the Mail Delivery Officer, showing that Sherry Albright, the plaintiff's girlfriend, was attempting, on plaintiff's behalf, to bribe a fellow inmate to get others to make false accusations against staff, in order to frame them.[15]

Accordingly, plaintiff is warned that pursuant to 28 U.S.C. §1915(g) he will not be granted *in forma pauperis* status in the future, if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." The instant case will be the first filed by plaintiff in this district that has been dismissed as frivolous and/or malicious.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss (Dkt.# 16) be **GRANTED,** and the plaintiff's Complaint (Dkt.# 1 and 5) be **DISMISSED with prejudice as untimely, frivolous, malicious, and for failure to state a claim upon which relief can be granted**.

---

[10] See Dkt.# 17-5 and 17-6.

[11] See Dkt.# 17-6 and 17-8.

[12] See Dkt.# 17-8.

[13] See Dkt.# 17-7.

[14] Dkt.# 17-11.

[15] The letter states, in pertinent part: " . . .He wanted me to write you and ask you for a favor. . . He needs you to get 4 people to write a written statement sayin [sic] that they saw the guard smash his face of [sic] the second door heading out of the pod. It has to be a [sic] least 4 people. If you can get this done for him I'll send you $100. Have them write it and sign their names to it also and send them to me at my address . . . he said to tell you to please look out for him he really needs you to do this for him . . . " Dkt.# 17-11.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by May 28, 2014**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: May 14, 2014

        /s/ James E. Seibert
        JAMES E. SEIBERT
        UNITED STATES MAGISTRATE JUDGE